**REAVES et al. v. REAVES et al.** (No. 7302.)

Court of Civil Appeals of Texas. Austin.
Feb. 28, 1929.

Roy L. Walker and John C. Abney, both of Lampasas, and Mark McGee, of Fort Worth, for appellants.

Barker & Orn, of Cisco, for appellee.

BLAIR, J. Appellee Mrs. F. V. Reaves sued her divorced husband, appellant W. H. Reaves, in the district court of Lampasas county, for title and possession of certain real estate, and to set aside and hold for naught because of want of service of citation upon her, a judgment rendered by the same court in cause No. 3749, styled W. H. Reaves v. F. V. Reaves, awarding the same real estate to the said W. H. Reaves, and also sued appellants Otho G. Reaves and Howard Owens for title and possession of the same property, alleging, in substance, she owned the property as her separate estate, but was induced to deed it to a trustee under a separation agreement by the representations of her husband that the trustee would deed it back to her or to him, and he in turn would deed it to her; that the trustee conveyed the property to her then husband, appellant W. H. Reaves, who refused to convey same to her as agreed, but conveyed same to his brother, appellant Otho G. Reaves, in settle-ment of a prior existing debt; and that said Otho G. Reaves conveyed the property to appellant Howard Owens, both of whom had notice that appellee claimed the property when they purchased it. Appellee prayed that these deeds, notes, and liens executed in connection therewith be canceled and annulled. W. H. Reaves answered by a denial, and specially that he paid appellee $2,500 in consideration of her deeding the property to a trustee with agreement that the trustee was to reconvey the property to him as his separate estate, and that the judgment in said cause No. 3749 established his title to the property. Appellants Otho G. Reaves and Howard Owens answered that they were innocent purchasers for value and without notice of appellee's claim to the property.

The jury found, in response to special issue submitted, substantially as follows:

(1) That W. H. Reaves represented to appellee that, as soon as the trustee deeded the property back to him, he would deed it to her, and that appellee would not have executed the agreement but for these representations.

(2) That W. H. Reaves deeded the property to Otho G. Reaves in payment of a debt made prior to the date of the deed.

(3) That both Otho G. Reaves and Howard Owens knew that appellee claimed the property at the time each purchased it.

(4) That appellee did not execute the deed to the trustee with understanding that the trustee deed same to appellant W. H. Reaves as his separate property, and in consideration of his paying her $2,500.

(5) That appellee did not sign the waiver of citation introduced in evidence in cause No. 3749, styled W. H. Reaves v. F. V. Reaves, wherein W. H. Reaves was awarded the property here involved.

Upon these and other findings not necessary to mention here, the trial court rendered judgment awarding the real estate in suit to appellee as against all parties, canceled and annulled the deeds, notes, and liens complained of herein, and canceled and held for naught the judgment in cause No. 3749, which awarded the property to appellant W. H. Reaves; hence this appeal.

■ By their first four propositions, appellants contend that the evidence is insufficient to support several of the jury's above findings. The contentions are not sustained because appellee's evidence followed substantially the allegations of her pleadings with respect to each issue submitted. Whether the jury's finding that W. H. Reaves deeded the property to Otho G. Reaves in payment of a pre-existing debt is supported by the evidence is not material, since the jury found on another issue that Otho G. Reaves had notice of the claim of appellee to the property at the time he purchased same, and

this finding, which is a complete defense to any claim asserted by Otho G. Reaves to the property, is not attacked by appellants. For the same reason the sixth proposition, which complains of the admission of certain evidence relating to whether W. H. Reaves deeded the property to Otho G. Reaves in payment of a prior debt, is also without merit.

The fifth and remaining proposition raises the question of misconduct of the jury upon the ground that they "received and considered other testimony and evidence" not introduced on the trial of the case. While the jury were deliberating on the question of whether appellee Mrs. F. V. Reaves had signed the waiver of citation filed in cause No. 3749, supra, the following, according to juror J. B. Cox, transpired:

"In the jury room at the time we were considering the waiver shown me the jury sent out and got paper as near like the paper as they could. The paper was brought to them. We made tests of the signature on that paper. We wrote on this paper and marked it with a pen and followed it with a pencil and rubbed it to see if it would leave any indication of a tracing in any way, and compared it with the signature. Before we made that test with this paper, before we sent out and got this paper I had not made up my mind as to whether or not that waiver was signed by Mrs. Reaves. In the examination of that paper on which we made the tests, comparing it with her signature, by virtue of that comparison after I had looked at the way we fixed it to see whether it had been traced or not, then I made up my mind, but I hadn't before then. The use of that paper and the comparison there is what made me make up my mind that it had been traced. I considered Mrs. Reaves' testimony; considered all of it. As to whether I made an examination of the signature itself with a glass and also by feeling and looking at it, will say that I couldn't find it until we fixed this other and got it before the light just right. I never found it at all in the jury box, but after we got that and traced it and began to look at it, I could get it all right. The tracing that I spoke about that we all made was just a means of ascertaining if the other line had been traced; that is what my intentions were. I wouldn't say that the paper we used was exactly the same kind of paper, but I don't think it was. We wrote on that paper and then took a pen or something and bore down on it and traced around the signature, not on the signature on the waiver but on the paper that we made ourselves, and that was what caused me to decide that the waiver was traced. As to whether we could tell that it had been traced without that, will say that it looked like it had been traced all right. As to whether it was exhibited to all the jury, will say some said it didn't feel right. I can't tell you about

Mr. Cornett. As to whether that was merely a process by which I arrived at my verdict, will say I wanted to be convinced, and when I seen that and wrote over that, I decided that was the way that was done. I found it to be similar. Prior to that time several had voted favorably to the plaintiff, but I can't state how many. They sent for that right along in the beginning and I don't think they had voted at the time the paper was gotten. They had discussed it some but had not voted. Ten of them voted together but I can't say that it was before we had gotten the paper. I can't be positive of it."

The only other juror called was Dan Cornett, the foreman, who testified, in substance, that jurors Cox and Brown made the test testified to by Cox, and that some three or four jurors looked on; that before the test was made the jury stood ten to two to answer the first issue "Yes," and Cox and Brown probably voting "No"; that all the jurors, including Cox and Brown, were agreed at all times that appellee's signature on the waiver had been "tampered" with. An expert on signatures was asked while on the witness stand to run his finger over the signature on the waiver and to hold same between him and the light to see if he could discover whether the signature had been traced. He did so and testified he could not discover any tracing by that process. Jurors Brown and Cox alone made these tracings in the jury room. They held their traced signature and the signature on the waiver between them and the light by way of comparison and also ran their fingers across these signatures, and Cox, by this process and a consideration of appellee's evidence, concluded that the signature on the waiver had been traced.

The making of this test, tracing and comparing the signatures as stated, was a mere process used by this juror to make up his mind as to whether the signature on the waiver was a forgery, about which he had some doubt, until the test was made, and was not receiving "other testimony" within the meaning of that term as it is used in article 2234, R. S. 1925, to define misconduct of a jury. Appellants cite no cases in point, and we find none directly in point. On principle, the case of Hall v. Collier (Tex. Civ. App.) 200 S. W. 880, settles this case. There one juror, while in the jury box, placed a piece of wet paper over a mortgaged diamond described as having a "scratch" or a "shiver," and called the attention of the other jurors to the fact that the flaw testified to by plaintiff was made more apparent by that process, and the court held:

"Certainly during the deliberations of the jury, one of the jurors might properly have held the stone between him and a light or near a light and called the attention of the other jurors to what the proximity of the

light disclosed. This is not an instance of the ·introduction of new matter during the deliberations of the jury, which has often been condemned by our courts, but it seems to us is merely an evidence of a proper degree of interest and desire on the part of this juror to get at the real facts in the case."

We find no error in the judgment, and it is affirmed in all things.

Affirmed.